DAVIS v BRYDGES

Docket No. 58163. Submitted June 28, 1982, at Grand Rapids.—Decided February 8, 1983.

Plaintiff, Joseph J. Davis, Jr., a stockholder in Brydges Home Improvement, Inc., brought an action in the Kent Circuit Court against defendants, John D. Brydges, Dorothy Brydges and Wildrex A. English, alleging breach of a stock purchase agreement entered into with him by the corporation and the parties defendant, who are the other stockholders in the corporation. Following a bench trial, the trial court, Robert A. Benson, J., found in accordance with a prior finding by the United States District Court for the Western District of Michigan, made in a bankruptcy proceeding involving the corporation, that the provision contained in the stock purchase agreement regarding bankruptcy by the corporation did not affect plaintiff's right to compel the repurchase of his 2,857 shares by the corporation. The trial court also found as a fact that the repurchase price for plaintiff's shares as provided in the agreement was $40,000. These findings are not challenged on appeal. The trial court made additional findings that the obligation of the corporation to repurchase plaintiff's shares was limited to $3,050, the agreed amount of the corporation's surplus, and that plaintiff was limited to receiving $3,050 in return for all of his shares. The court concluded, therefore, that the defendants' obligation to endorse and guarantee the notes of the corporation for the repurchase of plaintiff's shares under the terms of the stock purchase agreement was limited to $3,050. Since the corporation had already paid plaintiff $762.50, defendants were held liable to plaintiff for $2,287.50. Plaintiff appeals. *Held:*

1. The trial court was correct in finding that, subject to

References for Points in Headnotes

[1, 2] 18 Am Jur 2d, Corporations § 313.

19 Am Jur 2d, Corporations § 998.

Construction and operation of statute restricting corporation's right to purchase it's own stock to purchase from surplus. 61 ALR3d 1049.

[3] 18 Am Jur 2d, Corporations § 315.

limited exceptions, a corporation may purchase its own shares only out of surplus.

2. In order for a corporation to execute a promissory note for its own shares it must have sufficient surplus to cover the amount of the note at the time of purchase; the availability of such a surplus is to be determined as of the purchase date, not at the time of payment.

3. The corporation could outlay only up to the amount of its $3,050 surplus to purchase its own shares and could not issue a combination of cash and promissory notes in excess of that amount.

4. The stock purchase agreement did not impose primary personal liability on the part of the remaining shareholders. The remaining shareholders were only required to endorse and guarantee notes of the corporation given to repurchase another stockholder's shares.

5. Since the corporation could not give any notes to plaintiff after outlaying its capital surplus there were no notes for the defendants to endorse or guarantee and defendants are not liable to plaintiff for any amount beyond what the corporation could legally pay.

6. Since the corporation may legally pay plaintiff only $3,050 of the $40,000 it was required to pay under the terms of the stock purchase agreement, and the defendants are not required to make up the difference, plaintiff is not required to submit all of his shares to the corporation. Plaintiff must submit only 218 of his 2,857 shares since he will receive only 7.625% of what he was entitled to receive for all of his shares under the stock purchase agreement.

Affirmed as modified.

1. CORPORATIONS — REPURCHASE OF STOCK.

A corporation may purchase its own shares, subject to limited exceptions, only out of surplus; the corporation must have sufficient surplus at the time of the purchase, not at the time of payment, in order to execute a promissory note for its shares (MCL 450.1365, 450.1367; MSA 21.200[365], 21.200[367]).

2. CORPORATIONS — REPURCHASE OF STOCK — LIABILITY OF SHAREHOLDERS.

The remaining stockholders of a corporation are not liable to a stockholder whose shares are to be repurchased by the corporation under the terms of a stock purchase agreement for any amount beyond what the corporation could legally pay for such shares where such purchase agreement does not impose per-

sonal liability on the part of the remaining stockholders and only requires them to endorse and guarantee notes of the corporation given for the repurchase of another stockholder's shares and where there are no such notes which the remaining stockholders could legally endorse or guarantee.

3. CORPORATIONS — REPURCHASE OF STOCK.

A stockholder is not required to submit all of his shares to a corporation for repurchase by the corporation under the terms of a stock purchase agreement which requires the corporation to pay $40,000 in exchange for all of the stockholder's shares where the corporation may legally pay the stockholder only $3,050 and the remaining stockholders are not required to make up the difference; since the stockholder will receive only 7.625% of what he is entitled to receive for all of his shares he must submit only that percentage of his shares to the corporation for repurchase.

*Miller, Johnson, Snell & Cummiskey* (by *Joseph J. Davis, Jr.*), for plaintiff.

*Bergstrom, Slykhouse & Shaw, P.C.* (by *Robert G. Quinn, Jr.*), for defendants.

Before: M. J. KELLY, P.J., and R. M. MAHER and R. L. TAHVONEN,* JJ.

M. J. KELLY, P.J. Plaintiff appeals as of right from the trial court's judgment which awarded plaintiff $2,287.50 after a bench trial.

The facts in this case are not in great dispute. Defendant John D. Brydges was the owner of a sole proprietorship, Brydges Home Improvement Company. The sole proprietorship was subsequently incorporated under the laws of Michigan. Mr. and Mrs. Brydges transferred to the new corporation whatever assets they had in the sole proprietorship. A book value of $10,000 was placed upon this contribution. In return, they received 70% of the outstanding stock of the corporation.

* Circuit judge, sitting on the Court of Appeals by assignment.

Mr. Brydges received 7,143 shares and Mrs. Brydges received 2,857 shares.

Shortly before the incorporation occurred, plaintiff, Joseph J. Davis, Jr., contacted Mr. Brydges about employment. Plaintiff and defendants discussed the expansion of the business to include manufacture of what was then a scarce commodity, insulation material. It was agreed that Davis and defendant Wildrex English would invest in the new corporation. Davis contributed $40,000 in cash to the corporation, $24,000 in December, 1977, $4,000 in March, 1978, and $12,000 in April, 1978. In return for this contribution, Davis received 2,857 shares, or 20% of the outstanding stock of the corporation. English contributed $20,000 in cash and received 1,428 shares, or 10% of the outstanding stock.

In February, 1978, the parties, along with the corporation, entered into a stock purchase agreement. Although the agreement was the subject of negotiations between the parties, the trial court found as fact that the agreement was drafted by attorneys for the corporation. Paragraph 4 of the agreement provided for the repurchase of the shares of stock owned by Davis or English in the event that either one of them should cease to be employed by the corporation:

"4. TERMINATION OF EMPLOYMENT. In the event the employment with the Corporation of Joseph J. Davis, Jr. or Wildrex A. English is terminated for any reason whatsoever, whether or not that termination be voluntary or involuntary, the employee so terminated shall sell to the Corporation, and the Corporation shall purchase from such terminated employee, all of the issued and outstanding shares of the capital stock of the Corporation then owned by the terminated employee. The purchase price and terms of purchase for said stock

shall be as indicated in paragraph 1(d) above; except the interest shall be two percent (2%) over the prime rate as charged by Union Bank and Trust Company, N.A., of Grand Rapids, Michigan, on the closing date, and if the total purchase price is equal to or less than the terminated employee's initial investment for such stock, the total purchase price shall be paid within two (2) years after closing, and if the purchase price exceeds the terminated employee's initial investment for such stock, an amount equal to the initial investment must be paid within two (2) years after closing."

Paragraph 1(d) provided the terms for such a repurchase:

"1(d) Price and Terms. The purchase price for said stock shall be the purchase price as determined under paragraph 3 of this agreement. The terms of purchase shall be twenty percent (20%) of the purchase price at closing and the balance in four (4) equal annual payments, commencing one (1) year after the closing, including interest on the balance at one percent (1%) over the prime rate as charged by Union Bank and Trust Company, N.A., of Grand Rapids, Michigan, on the closing date. The balance shall be evidenced by a promissory note, which note shall contain a right of prepayment of all or a part thereof without penalty and a provision for acceleration in the event of a default in payment of interest or principal."

The parties' agreement also required that the remaining shareholders guarantee payment of any note given by the corporation for repurchase of a stockholder's shares:

"9. PURCHASE BY CORPORATION. Whenever the Corporation shall, pursuant to this agreement, be required to purchase shares of the capital stock of the Corporation, each Stockholder and the personal representatives of any decedent shall do all things and execute and deliver all papers as may be necessary to consummate

such purchase. Any note required to be given hereunder by the Corporation as part of the purchase price shall be endorsed and guaranteed by the remaining or surviving Stockholders, as the case may be, who shall not be discharged from such liability by reason of the subsequent extension, modification or renewal of any such note."

Finally, the agreement provided:

"18. BANKRUPTCY. If the Corporation shall be involved in financial difficulties as evidenced by (a) Corporation consenting to the appointment of a receiver for all or a substantial part of its property; or (b) Corporation filing a petition in bankruptcy or for reorganization or for the adoption of an arrangement under the Federal Bankruptcy Act or an answer or admission seeking the relief therein provided; or (c) Corporation being adjudicated a bankrupt; or (d) the entry of a court order, without the consent of the Corporation, appointing a receiver or trustee for all or a substantial part of the property of the Corporation, unless said order is dissolved within thirty (30) days from the date of entry thereof; this agreement shall become void and of no further effect."

On October 16, 1978, Davis notified Mr. Brydges that he was resigning, effective immediately. This notice was given pursuant to ¶ 4 of the stock purchase agreement. Under the terms of the agreement, the closing date for repurchase of Davis' shares would have been January 15, 1979. By agreement, the closing date was postponed until February 15, 1979. On February 13, 1979, the corporation filed a petition for bankruptcy under Chapter XI.

After a hearing in the United States District Court for the Western District of Michigan, that court held that Davis' rights under the stock purchase agreement were vested and Davis could enforce the repurchase provisions in spite of ¶ 18

of the stock purchase agreement. The bankruptcy court found further, however, that the corporation's obligation under ¶ 4 of the stock purchase agreement was limited to $3,050, which was the corporation's surplus capital at the time of the filing of the petition in bankruptcy. Subsequently, the corporation paid Davis $762.50.

On August 10, 1979, Davis brought suit in circuit court against the defendants for breach of the stock purchase agreement. Following a bench trial, the trial court held in accord with the federal district court that ¶ 18 of the agreement did not affect Davis' right to compel the repurchase of his shares by the corporation. This finding is not challenged on appeal. The trial court found as fact that the repurchase price for Davis' shares under ¶ 3 of the agreement, as referred to by ¶ 1(d), above, was $40,000. No party disputes this factual determination on appeal. The trial court found further, however, that the obligation of the corporation to repurchase Davis' shares was limited by MCL 450.1365; MSA 21.200(365), which provides in part that "A corporation may purchase its own shares only out of surplus * * *". Since the parties agreed that the corporation's surplus was $3,050, the trial court held that Davis was limited to receiving $3,050 in return for all of his shares. The court concluded, therefore, that defendants' obligation to "endorse and guarantee" the notes of the corporation for repurchase of Davis' shares under ¶ 9 of the agreement was limited to $3,050. Since the corporation had already paid Davis $762.50, defendants were held liable to Davis for $2,287.50.

The trial court was correct in finding that, subject to limited exceptions, a corporation may purchase its own shares only out of surplus. See MCL

450.1365; MSA 21.200(365).[1] In addition, in order for a corporation to execute a promissory note for its shares, it must have sufficient surplus to cover the amount of the note at the time of purchase. The availability of surplus is to be determined as of the purchase date, not at the time of payment. See MCL 450.1367; MSA 21.200(367).[2] Since the corporation in the instant case had a capital surplus of only $3,050, it could outlay only up to that amount to purchase its own shares and could not issue a combination of cash and promissory notes in excess of that amount.

Paragraph 9 of the stock purchase agreement does not impose primary personal liability on the part of the remaining shareholders. The stockholders are required only to endorse and guarantee notes of the corporation given for repurchase of another stockholder's shares. Since the corporation in this case was prohibited by Michigan law from giving any notes to Davis after outlaying its $3,050 capital surplus, there were no notes for the remaining stockholders to endorse or guarantee. The remaining stockholders, therefore, are not liable to Davis for any amount beyond what the corporation could legally pay for Davis' shares.

Under the parties' agreement, however, the corporation is required to pay $40,000 in exchange for Davis' 2,857 shares. Since the corporation may legally pay Davis only $3,050, and the remaining stockholders are not required to make up the

---

[1] "A corporation may purchase its own shares only out of surplus except as provided in sections 366 and 367 [MCL 450.1366; MSA 21.200(366) and MCL 450.1367; MSA 21.200(367)]."

[2] "A corporation which has purchased its own shares out of surplus may defer payment for the shares over a period as may be agreed between it and the selling shareholder. The obligation so created constitutes an ordinary debt of the corporation and the validity of any payment made upon the debt so created is not affected by the absence of surplus at the time of the payment."

difference, Davis is not required to submit all of his 2,857 shares to the corporation. Since Davis will receive only 7.625% of what he was entitled to receive for all of his shares under the stock purchase agremeent, we hold that he must submit only that percentage of his shares to the corporation. Thus, in return for a total sum of $3,050, Davis must transfer to the corporation only 218 of his shares.

Affirmed as modified.